UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BITA ORDIAN, *et al.*,<br><br>   Plaintiffs,<br><br>  v.<br><br>ANTONY J. BLINKEN,<br><br>   Defendant. | Civil Action No. 23-2993 (TSC) |

## MEMORANDUM OPINION

Plaintiff Bita Ordian, a U.S. citizen, has petitioned for an immediate relative visa on behalf of her father, Plaintiff Abbas Ordian, who is an Iranian national. Compl. ¶ 70–71, ECF No. 1. Plaintiffs jointly seek declaratory, mandamus, and injunctive relief to remedy allegedly unlawful delay in the adjudication of that petition. Defendant has moved to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot. to Dismiss, ECF No. 6 ("MTD"). For the reasons set forth below, the court will GRANT Defendant's Motion and dismiss this action. It will accordingly DENY as moot Plaintiffs' pending Motion to Compel Pursuant to Local Civil Rule 7(n), ECF No. 8.

### I. BACKGROUND

The Immigration and Nationality Act ("INA") governs the issuance of visas to foreign nationals who seek to enter the United States. 8 U.S.C. § 1101 *et seq.* A U.S. citizen seeking to obtain a visa on behalf of an immediate relative—such as a parent—must submit a Form I-130, Petition for Alien Relative, to U.S. Customs and Immigration Services ("USCIS"). 8 U.S.C. §§ 1154, 1151(b)(2)(A)(i) (defining a parent as an "immediate relative" for the purposes of Form I-130 petitions); 8 C.F.R. § 204.1(a)(1).

After Plaintiffs submitted a petition seeking a visa for Abbas Ordian, he was interviewed by the Consular Section of the U.S. Embassy Abu Dhabi on May 16, 2023. Compl. ¶ 78. Following the interview, the consular officer "refused" the application. A visa refusal

> means the consular officer determined that the applicant was not eligible for a visa after completing and executing the visa application and any required interview. It is possible that a consular officer will reconsider a visa application refused . . . at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible. When a consular officer refuses a case . . . , she or he will convey to the applicant whether the applicant is required to provide any further documentation or information, or whether the case requires additional administrative processing.

*Administrative Processing Information*, U.S. Dep't of State.[1] The officer requested that Plaintiffs submit form DS-5535, which comprises "15 years of detailed history including addresses, employment, travel, and social media handles." Compl. ¶ 79. Plaintiffs submitted the form later that day, but have not received any update on the status of the petition since that time. *Id.* ¶¶ 82, 84–86.

Plaintiffs claim that the delay in further government action on the petition violates duties imposed by "the INA, federal regulations, and published agency guidance" and therefore justifies mandamus relief, *id.* ¶ 105; and that it constitutes "unlawfully withheld" and "unreasonably delayed" agency action violating the Administrative Procedure Act ("APA"), *id.* ¶ 120, 142, 147. The court addresses all of Plaintiffs' claims jointly because "in cases challenging agency delay, 'the standards for obtaining relief' under the Mandamus Act and the APA are 'essentially the same.'" *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 17 (D.D.C. 2022)

---

[1] *Available at* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html. Courts in this jurisdiction have frequently taken "judicial notice of information posted on official public websites of government agencies." *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016).

(quoting *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010)). "The central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to warrant mandamus." *Id.* (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)) (internal quotations omitted). Plaintiffs seek an order declaring the delay unreasonable and compelling Defendant to adjudicate the petition within 30 days. Compl. at 28–29 (Prayer for Relief).

Defendants make four arguments for dismissal. First, that the Secretary of State is an improper defendant because he "has no alleged role in re-adjudicating the Visa Application." MTD at 5. Second, that challenges to the refusal of visa applications are barred by the consular nonreviewability doctrine. *Id.* at 6–10. Third, that Plaintiffs' claims cannot succeed because the law does not provide a "clear, non-discretionary duty requiring a consular officer to adjudicate, let alone re-adjudicate, any specific visa application." *Id.* at 10; *see id.* at 10–18. And fourth, that the alleged delay here is not unreasonable. *Id.* at 18–26.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must establish that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. Food & Drug Admin.*, 483 F.3d 824, 828 (D.C. Cir. 2007). In evaluating such motions, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). The court may also consider "any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice." *Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." But as with a 12(b)(1) motion, courts "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quotation marks and citation omitted). That said, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. And a court need not accept as true "a legal conclusion couched as a factual allegation," nor "inferences . . . unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quotation omitted).

### III.    ANALYSIS

The Secretary of State is not an improper defendant in this case. Because Plaintiffs have not plausibly alleged that any delayed re-adjudication of their refused petition violated a clear statutory duty, however, the Complaint must be dismissed. Accordingly, the court need not decide whether consular nonreviewability applies in this case.

**A.    Improper defendant**

At the outset, the court rejects Defendant's argument that Plaintiffs lack standing to bring claims against the Secretary of State. MTD at 5–6. The redressability requirement of standing turns on "whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996). Defendant argues that "action on a specific Visa Application" is "the exclusive province" of consular officers at the embassies. MTD at 6. And it

is true that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).

That said, "[c]ontrol over a consular officer's visa *determinations*—that is, her decisions to 'grant, deny, or revoke immigrant and non-immigrant visas,' is not the same as control over the *timing* by which the consular officer considers the applications presented to her." *Al-Gharawy*, 617 F. Supp. 3d at 10 (quoting *Saavedra Bruno*, 197 F.3d at 1156) (formatting modified). Plaintiffs here do not seek to compel a particular decision on their petition; only to compel that it be decided soon. *See* Compl. at 28–29 (Prayer for Relief). And Defendant does not contend that the Secretary of State lacks authority to "direct[] consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time,'" nor has he identified any authority supporting such a defense. *Al-Gharawy*, 617 F. Supp. 3d at 10 (quoting 5 U.S.C. § 555(b)). Accordingly, Defendant has not justified dismissal on this basis.

**B.**    <u>**Consular nonreviewability**</u>

The consular nonreviewability doctrine "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao*, 985 F.3d at 1024. Defendant argues that a consular officer's "refusal" of a visa application always constitutes a nonreviewable "withholding of a visa." MTD at 7. However, several courts in this district have rejected that argument, concluding that such "refusal" may be reviewable where it appears to be "merely provisional, with a final decision yet to come"—*e.g.*, because "administrative processing" remains ongoing. *Al-Gharawy*, 617 F. Supp. 3d at 16; *see also Akrayi v. United States Dep't of State*, No. 22-CV-1289, 2023 WL 2424600, at *3 (D.D.C. Mar.

9, 2023). That is the status Plaintiffs allege here: Their petition is still "undergoing [administrative] processing." Compl. ¶ 85.

The court need not decide this issue, though. "Dismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)." *Baan Rao*, 985 F.3d at 1027. And because the court concludes that there are independent reasons to dismiss Plaintiffs' claims, *see infra* Section III.C., it need not decide whether consular nonreviewability applies here, *see Almaqrami v. Pompeo*, 933 F.3d 774, 784 n.3 (D.C. Cir. 2019) ("[C]ourts may assume without deciding that plaintiffs' statutory claims are reviewable and proceed to the merits notwithstanding consular nonreviewability." (internal quotation omitted)); *Zandieh v. Pompeo*, No. CV 20-919, 2020 WL 4346915, at *4 (D.D.C. July 29, 2020) ("[B]ecause it finds that the delay asserted here is not unreasonable," the court "need not decide whether plaintiffs' claims are reviewable." (internal quotation omitted)).

### C.   Unreasonable delay

Plaintiffs' claims must be dismissed because they have failed to plausibly allege an unreasonable delay as a matter of law. That conclusion is guided by the so-called "*TRAC* factors" set forth in *Telecommunications Research & Action Center v. FCC (TRAC),* 750 F.2d 70, 80 (D.C. Cir. 1984). Both Defendant and Plaintiffs resist the *TRAC* factors' applicability here—albeit for different reasons. But their arguments mistake the law.

Defendant argues that "[a]bsent an independent statutory duty, the *TRAC* factors themselves do not decide whether an agency has violated a clear duty to act for purposes of mandamus jurisdiction." MTD at 17.[2] In other words, because Plaintiffs seek mandamus relief,

---

[2] "To show entitlement to mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189

to establish jurisdiction they "must identify a clear 'non-discretionary act,' or 'a clear duty to act[,]' that the law compels an agency to take"—and if they do not, "an agency's delay to act, however long, cannot be unlawful or unreasonable." *Id.* (first quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); then quoting *Am. Hosp. Ass'n*, 812 F.3d at 189). But the D.C. Circuit has squarely rejected that reasoning, explaining that "depending on the circumstances," the *TRAC* factors themselves may still govern the initial mandamus inquiry:

> For example, in situations where plaintiffs allege that agency delay is unreasonable despite the absence of a specific statutory deadline, the entire *TRAC* factor analysis may go to the threshold jurisdictional question: does the agency's delay violate a clear duty?

*Am. Hosp. Ass'n*, 812 F.3d at 190. Thus, even accepting Defendant's premise that there is no specific statutory deadline here, the *TRAC* factors still govern the court's evaluation of whether it has mandamus jurisdiction over Plaintiffs' unreasonable delay claim.

For their part, Plaintiffs contend that "[a]n assessment of whether the agency's delay is unreasonable, given the circumstances of Plaintiffs' case, is a question of fact that must be decided by the Court in merits proceedings on the underlying complaint, rather than on a motion to dismiss." Opp'n to Def.'s Mot. to Dismiss, ECF No. 9 at 29 ("Opp'n"). And to be sure, deciding a claim of unreasonable delay is a "nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). "Nevertheless, the *TRAC* factors have been applied at the motion to dismiss stage to determine whether a plaintiff's complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Khan v. Bitter*, No. 23-cv-1576, 2024 WL 756643, at *4 (D.D.C. Feb. 23, 2024) (internal quotation omitted)

---

(D.C. Cir. 2016). Because Plaintiff does not satisfy the first two parts of this test, the court does not reach the third.

(formatting modified). That is because, sometimes, the "plaintiff's claimed delay in the adjudication of [a] visa is not unreasonable as a matter of law under the [*TRAC*] factors." *Id.* at *3 (internal quotation omitted); *see, e.g.*, *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) ("An analysis of the TRAC factors as applied here leads this Court to the same conclusion—that the twenty-five-month delay at issue here is not unreasonable as a matter of law, given the circumstances."). As explained below, the court reaches that conclusion here.

Having concluded that it is appropriate to apply the *TRAC* factors, the court considers each of them in turn:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal quotations omitted). "[T]hese factors function not as a hard and fast set of required elements, but rather as useful guidance as to whether a delay is 'so egregious as to warrant mandamus.'" *Am. Hosp. Ass'n*, 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 79).

1. Factors one and two

"The first factor is the most important TRAC factor, and is typically considered together with the second TRAC factor." *Arab v. Blinken*, 600 F. Supp. 3d 59, 69 (D.D.C. 2022) (internal quotation omitted). Their joint focus is "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. United States Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

There is "no statutory or regulatory timeframe . . . within which the State Department or a consular officer must re-adjudicate visa applications." *Khan*, 2024 WL 756643, at *4 (quotation omitted). The closest Plaintiffs come to identifying one is a citation to the State Department's Foreign Affairs Manual ("FAM"), the purpose of which is to provide "directives and guidance for Department of State personnel." 9 FAM 101.1-1. One provision of the Manual acknowledges that in appropriations bills, Congress has directed the Department to "establish a policy under which immediate relative . . . visas be processed within 30 days," and accordingly states that the Department "expects all [consular] units to strive to meet the [30-day] requirement[]." 9 FAM 504.7-2 (citing Consolidated Appropriations Act, 2000, Pub. L. 106-113 § 237, "and subsequent legislation"). But it is not clear if that provision applies to the re-adjudication of refused visas. The provision, titled "Timeliness of Interview," is nested within the "Interview by Consular Officer" section. Here, there is no question that Abbas Ordian already received an interview and refusal decision on the petition for his visa; Plaintiffs' challenge is to the delay following those events. See Compl. ¶ 78–84, 141. It therefore appears that the 30-day policy may well have been satisfied.

In any case, the 30-day policy is just that—an internal State Department policy. It is not a statutory deadline. *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 318 (D.D.C. 2020) (contrasting the policy with a statutory provision stating that the Department of Treasury "shall pay" qualifying Tribal government's "not later than 30 days after" a certain date). And it lacks other indicia of being legally binding. For one, the policy "was not issued pursuant to notice-and-comment rulemaking," which suggests that it serves as internal guidance rather than carrying the force of law or creating enforceable obligations. *Poursohi v. Blinken*, No. 21-cv-1960-TSH, 2021 WL 5331446, at *8 (N.D. Cal. Nov. 16, 2021) (citing *Scales v. Immigr. and*

*Naturalization Serv.*, 232 F.3d 1159, 1166 (9th Cir. 2000)).  The policy's use of language like "policy," "expect," and "strive" further confirms its precatory nature, *id.* at *8, which fits with the Manual's purpose as "a form of informal guidance for Department employees, not the kind of binding action that marks the consummation of the agency's decisionmaking or generates legal consequences in particular cases," *Avagyan v. Blinken*, No. 22-cv-2440-CRC, 2022 WL 19762411, at *5 (D.D.C. Sept. 29, 2022) (citing *Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 712–13 (D.C. Cir. 2015)).  At most, then, the Manual's 30-day policy reflects a general congressional expectation for timely adjudication of immediate relative visas rather than a specific legal requirement.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" for the reasonableness of a delay.  *Khan*, 2024 WL 756643, at *4 (quotation omitted).  "Even though courts have drawn no bright lines to determine reasonableness, district courts have generally found that immigration delays in excess of five, six, seven years are unreasonable." *Id.* (formatting modified).  By contrast, courts in this district "consistently have held that two or three years does not constitute an unreasonable delay."  *Tekle v. Blinken*, No. 21-cv-1655, 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022); *see, e.g.*, *Akrayi*, 2023 WL 2424600, at *3 ("The delay in [visa] processing, almost three years, does not reach the length that courts have found unreasonable."); *Sarlak v. Pompeo*, No. 20-cv-0035, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (collecting cases); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (delay of about two years did not "require judicial intervention").

On balance, then, the first and second *TRAC* factors slightly favor Defendant.  Approximately thirteen months have passed since the State Department's last action on Plaintiffs' petition—the refusal and request for additional information on May 16, 2023.  Compl.

¶ 78. On the one hand, that exceeds the timeframe for the State Department's statute-prompted general policy of completing at least the initial processing of immediate-relative visas within 30 days. But the Department may have already complied with that policy by conducting the interview and refusing Plaintiffs' petition. And on the other hand, thirteen months is substantially less time than other delays in post-refusal processing that courts have declined to consider unreasonable. *See, e.g.*, *Ghadami v. United States Dep't of Homeland Sec.*, No. 19-cv-0397-ABJ, 2020 WL 1308376 (D.D.C. Mar. 19, 2020) (twenty-five month delay not unreasonable); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87 (D.D.C. 2020) (same). The State Department's allocation of consular services is "entrusted by a broadly worded statute" that involves "balancing complex concerns involving security and diplomacy, State Department resources and the relative demand for visa applications." *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997). And Defendant explains that the delay here is "due to processing limitations" and the fact that other applications are ahead of Plaintiffs' petition in the processing queue. MTD at 19, 22. That is enough to preclude the inference that the thirteen months of delay in this case is unreasonable.

2. Factors three and five

The third and fifth *TRAC* factors are also often considered together; they "examine 'the nature and extent of the interests prejudiced by the delay,' including whether 'human health and welfare' might be implicated." *Khan*, 2024 WL 756643, at *5 (quoting *TRAC*, 750 F.2d at 80).

Plaintiffs allege at least one form of cognizable harm to their health and welfare—"[p]rolonged separation from a[n] . . . immediate family member." *Id.* Because of "the unreasonable delay in adjudication, . . . Plaintiffs have been separated from one another," with Bita living in the United States and Abbas remaining in Iran. Compl. ¶¶ 9, 71–72, 84, 92–93. In addition, Plaintiffs allege that they "have been unable to definitively plan for their future and

have been forced to put their plans on hold." *Id.* ¶ 7. Because this burden is shared by everyone awaiting visa adjudication, however, it may "weigh only slightly in support of finding an unreasonable delay." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021). Plaintiffs do not allege any "current and actual danger to the[ir] health" resulting from the delay. *Alshawy v. United States Citizenship & Immigr. Servs.*, No. 21-cv-2206, 2022 WL 970883, at *6 (D.D.C. Mar. 30, 2022).

These considerations add some weight to Plaintiffs' side of the scale. While the court is "mindful that many others face similarly difficult circumstances as they await adjudication of their visa applications," *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) (formatting modified), there is no doubt that family separation can exact a substantial emotional and psychological toll. The third and fifth factors thus favor Plaintiffs.

3. Factor four

The fourth *TRAC* factor favors Defendant, who correctly observes that, in effect, the result that Plaintiffs seek would be "to prioritize the Visa Application here ahead of others." MTD at 22. Although that result might be less disruptive than a permanent change to Defendants' policies, it could still undermine their priorities. "The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991). "Processing capacity is presently a zero-sum game, granting plaintiffs' request to expedite would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." *Murway v. Blinken*, No. 21-cv-1618, 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022) (quotation omitted). As a result, "[r]elief that would simply reorder a queue of applicants seeking adjudication is generally viewed as inappropriate

when no net gain in such adjudications is achieved." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (quotation omitted).[3]  Accordingly, this factor weighs in Defendant's favor.

4. <u>Factor six</u>

The sixth *TRAC* factor observes that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80 (quoting *Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984)).  Plaintiffs infer bad faith from the delay in their petition's processing and Defendant's assertion that the relief they seek would disrupt agency priorities, but they cite no cases adopting that inference, and the court will not do so here.  The same delay and assertion are equally consistent with the State Department acting diligently within the limits of its processing capacity and competing priorities.  The Complaint does not plausibly plead impropriety or bad faith.

\*     \*     \*

On balance, the *TRAC* factors counsel against a finding of unreasonable delay here. While the length of delay exceeds the expected processing time for immediate relative visas under one interpretation of a legislatively prompted State Department policy, the delay falls well short of the time periods that other courts have considered unreasonable in the context of post-refusal administrative processing.  That tilts the first and second factors in Defendant's favor. The third and fifth factors favor Plaintiffs insofar as they are suffering from prolonged familial separation, but those and other burdens must be balanced against the similar harms facing other

---

[3] Plaintiffs' argument that there is no queue is based on documents attached to their Opposition, rather than on any allegations in the Complaint. *See* Opp'n at 40–41, 43.  "It is well settled law that a plaintiff cannot amend its complaint by the briefs in opposition to a motion to dismiss." *Woytowicz v. George Washington Univ.*, 327 F. Supp. 3d 105, 121 (D.D.C. 2018) (quotation omitted).

waiting visa applicants who have not filed a lawsuit and whose delay could be lengthened by granting Plaintiffs the relief they seek. And the fourth factor favors Defendant for similar reasons: Given the Department's limited resources, expediting the re-adjudication of Plaintiffs' petition by judicial fiat would leapfrog them ahead in the queue of similarly situated people and disrupt the government's priorities. Finally, the court finds no support in the Complaint to infer that Defendant has acted in bad faith.

On balance, then, the *TRAC* factors counsel dismissal of this case. The court acknowledges the considerable difficulties that Plaintiffs face because of the delay. But as a matter of law, the court cannot conclude that Plaintiffs have plausibly pleaded Defendant's delay to be so unreasonable as to warrant "judicial reordering of agency priorities." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 169 (D.D.C. 2021).

### IV.     CONCLUSION

For these reasons, the court will GRANT Defendants' Motion to Dismiss, ECF No. 6, and dismiss this action. It will accordingly DENY as moot Plaintiffs' pending Motion to Compel Pursuant to Local Civil Rule 7(n), ECF No. 8. A corresponding Order will accompany this Memorandum Opinion.

Date: July 1, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge